**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. ______________________

| | |
|---|---|
| ETHAN LOVELESS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CAPITAL ONE, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO DISCOVER BANK, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION, LLC, | ) ) ) ) |
| Defendants. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff alleges Capital One, National Association, successor by Merger to Discover Bank ("Discover"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") violated the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq.* ("FCRA").

**PARTIES**

1. Plaintiff is a natural person and resident of Miami-Dade County, Florida.

2. Capital One is a National Association with its principal place of business in Alexandria, Virginia.

3. Trans Union is a foreign limited liability company with its principal address at 555 West Adams St., Chicago, Illinois 60661.

4. Experian is a foreign for-profit corporation with its principal place of business at 475 Anton Boulevard Costa Mesa, CA 92626.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the FCRA, a federal statute.

6. Venue is proper because Plaintiff lives in Miami-Dade County, Florida and the acts and conduct complained of occurred in Miami-Dade County, Florida.

7. This Court has personal jurisdiction over Defendants because they conduct business in Florida making it foreseeable that they would be brought into a Florida court.

## FACTUAL ALLEGATIONS

8. An identity thief stole Plaintiff's personal identifying information.

9. As a result, the thief opened a Discover credit card account in Plaintiff's name.

10. Plaintiff never applied for, opened, authorized, or used the Discover account.

11. Plaintiff never received any card, money, goods, or services from the Discover account.

12. The fraudulent Discover account defaulted in 2021.

13. Experian, Equifax, Inc. ("Equifax"), and Trans Union each reported the fraudulent Discover account on Plaintiff's credit file.

14. Plaintiff disputed the account with each credit agency, telling them it was the result of identity theft.

15. Experian and Trans Union each removed the fraudulent Discover account from Plaintiff's credit file.

16. In or about March 2026, Experian and Trans Union each reinserted the previously deleted Discover account into Plaintiff's credit file.

17. On information and belief, neither Experian nor Trans Union obtained a certification from the furnisher that the reinserted account was complete and accurate, because no such certification could exist for an account Plaintiff never opened.

18. In or about March 2026, Plaintiff disputed the fraudulent Discover account directly with Experian and Trans Union.

19. With each dispute, Plaintiff submitted a copy of his FTC Identity Theft Report, signed under penalty of perjury on January 6, 2026.

20. Plaintiff's FTC Identity Theft Report identified the Discover account as an account the thief opened and as information that resulted from identity theft.

21. Plaintiff's FTC Identity Theft Report stated that the fraudulent accounts did not relate to any transaction by Plaintiff.

22. Plaintiff also provided each bureau with proof of his identity.

23. Experian and Trans Union each forwarded Plaintiff's dispute to Capital One.

24. Capital One's receipt of the dispute triggered its duty to investigate the disputed account.

25. Capital One failed to conduct a reasonable investigation and verified the fraudulent account as accurate.

26. Equifax received the same dispute and the same identity theft documentation and deleted the fraudulent Discover account from Plaintiff's Equifax credit file.

27. But Experian and Trans Union refused to delete or block the fraudulent Discover account.

28. Plaintiff also filed complaints against Experian and Trans Union with the Consumer Financial Protection Bureau.

29. In those disputes, Plaintiff provided Experian and Trans Union proof of his identity.

**COUNT I - EXPERIAN'S VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681c-2**

30. Plaintiff is a natural person and therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

31. Experian is consumer reporting agency as defined by FCRA, 15 U.S.C. §1681a(f).

32. Experian prepared and issued consumer credit reports concerning Plaintiff which included the fraudulent Discover account.

33. Plaintiff identified the Discover account to Experian as information that resulted from identity theft.

34. In support, Plaintiff provided Experian with proof of his identity, a copy of his FTC Identity Theft Report, an identification of the fraudulent account, and a statement that the account did not relate to any transaction by Plaintiff. 15 U.S.C. § 1681c-2(a)(1)–(4).

35. Plaintiff's FTC Identity Theft Report is an "identity theft report" as defined by 15 U.S.C. § 1681a(q)(4).

36. The FCRA required Experian to block the reporting of the fraudulent account within four business days. 15 U.S.C. § 1681c-2(a).

37. A consumer reporting agency may decline or rescind a block only on three grounds, none existed here. 15 U.S.C. § 1681c-2(c)(1).

38. Experian blocked then rescinded the block of the fraudulent Discover account.

39. Experian could not have reasonably determined that the block was requested in error.

40. Plaintiff submitted a sworn FTC Identity Theft Report, proof of his identity, and a statement that the account did not relate to any transaction by him.

41. Nothing in that submission suggested error. 15 U.S.C. § 1681c-2(c)(1)(A).

42. Experian could not have reasonably determined that Plaintiff made a material misrepresentation relevant to the block.

43. Plaintiff swore to the truth of his FTC Identity Theft Report under penalty of perjury, and Experian held nothing contradicting it. 15 U.S.C. § 1681c-2(c)(1)(B).

44. Experian could not have reasonably determined that Plaintiff obtained goods, services, or money from the account.

45. Plaintiff never opened, used, or received anything from the account, and Experian held no evidence that he did. 15 U.S.C. § 1681c-2(c)(1)(C).

46. Equifax received the identical submission and blocked the account.

47. Experian held the same record Equifax held and so could not have reasonably reached a different conclusion.

48. Experian therefore had no authority to rescind the block and reinsert the fraudulent account onto Plaintiff's credit file.

49. Experian thereafter published or transmitted one or more consumer reports about Plaintiff to third-party users that included the fraudulent Discover account. Each publication falsely conveyed to a third party that Plaintiff owed a defaulted Discover debt.

50. The publication of inaccurate derogatory information about Plaintiff to third parties, after Experian received his dispute and identity theft report, is a discrete and

continuing injury. The injury recurs with each dissemination of his credit file and continues each day Experian permits the inaccuracy to remain.

51. As a direct and proximate result of Experian's violation, Plaintiff suffered actual damages. Experian left the fraudulent Discover account on Plaintiff's Experian credit file after Plaintiff disputed it and provided documentation sufficient to investigate. Plaintiff was forced to spend time identifying the error, preparing written disputes, gathering and copying identifying documents, mailing correspondence, reviewing Experian's response, monitoring his credit file, and attempting to prevent further damage to his credit reputation. That time was lost and cannot be recovered.

52. Plaintiff suffered emotional distress caused by Experian's violation and by the continued presence of the fraudulent Discover account on his Experian credit file. Plaintiff experienced anxiety, frustration, embarrassment, and loss of peace of mind because Experian continued to maintain a fraudulent Discover account for a debt Plaintiff did not owe after Plaintiff gave Experian enough information to determine that the account did not belong to him or could not be verified as his obligation.

53. Plaintiff's credit reputation and creditworthiness were damaged. After receiving Plaintiff's dispute, Experian reinserted the fraudulent account as a derogatory item in Plaintiff's Experian credit file. On information and belief, Experian thereafter furnished one or more consumer reports concerning Plaintiff to third parties that included the inaccurate Discover account. Each such publication falsely represented to a third party that Plaintiff was owed a past-due Discover debt.

54. Plaintiff's damages include reputational harm, loss of creditworthiness, credit-score harm, wasted time, out-of-pocket expenses, and emotional distress.

55. As a result, Plaintiff suffered actual damages as alleged above.

56. Plaintiff is entitled to recover actual damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681o.

57. Plaintiff is also entitled to recover statutory damages, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681n for Experian's willful violations.

**COUNT II - EXPERIAN'S VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i**

58. Plaintiff is a natural person and therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

59. Experian is consumer reporting agency as defined by FCRA, 15 U.S.C. §1681a(f).

60. Experian has prepared and issued consumer credit reports concerning Plaintiff which have included information about a fraudulent account.

61. Plaintiff disputed the completeness and accuracy of the fraudulent account directly with Experian.

62. With his dispute, Plaintiff gave Experian a sworn FTC Identity Theft Report identifying the Discover account as fraudulent.

63. Plaintiff's dispute triggered Experian's duty to conduct a reasonable reinvestigation. 15 U.S.C. § 1681i(a)(1).

64. Experian was required to delete the disputed information if its accuracy could not be verified, or if it was incomplete or inaccurate, under 15 U.S.C. § 1681i(a)(5)(A).

65. Experian's reinvestigation was unreasonable.

66. Plaintiff disputed the Discover account directly with Experian, including in March 2026.

67. Experian was required to conduct a reasonable reinvestigation of the disputed information. 15 U.S.C. § 1681i(a)(1)(A).

68. Experian was required to delete the disputed information if it was inaccurate, incomplete, or could not be verified. 15 U.S.C. § 1681i(a)(5)(A).

69. Experian's reinvestigation was unreasonable.

70. Plaintiff's dispute gave Experian a sworn FTC Identity Theft Report identifying the Discover account as fraudulent and proof of his identity.

71. Experian failed to evaluate the FTC Identity Theft Report against the disputed tradeline.

72. Experian failed to consult its own file for Plaintiff, which showed that Experian had previously deleted this very account.

73. Experian had enough information to determine that the account was fraudulent or, at minimum, that it could not be verified as Plaintiff's obligation.

74. On information and belief, Experian's reinvestigation consisted of forwarding the dispute to Capital One through an automated or substantially automated e-OSCAR workflow and accepting Capital One's coded verification response.

75. Experian did not conduct a meaningful human review of Plaintiff's FTC Identity Theft Report, his proof of identity, or its own record of the prior deletion.

76. Experian's acceptance of Capital One's verification was unreasonable because Plaintiff's dispute presented an objective, readily verifiable identity theft.

77. Equifax received the same dispute and the same FTC Identity Theft Report and deleted the account. Experian, working from the identical record, did not. No reasonable reinvestigation reaches opposite results on identical evidence.

78. Experian also reinserted the previously deleted Discover account without first obtaining certification from Capital One that the account was complete and accurate, and without notifying Plaintiff of the reinsertion within five business days. 15 U.S.C. § 1681i(a)(5)(B)(i)–(ii).

79. Reinserting an account Experian had already removed, without any certification of its accuracy, is unreasonable on its face.

80. Experian failed to delete, block, or correct the fraudulent Discover account.

81. As a direct and proximate result of Experian's conduct, Plaintiff suffered actual damages. Experian left the fraudulent Discover account on Plaintiff's Experian credit file after Plaintiff disputed it and submitted a sworn FTC Identity Theft Report sufficient to investigate and block the account.

82. Plaintiff spent time he cannot recover identifying the error, filing an FTC Identity Theft Report, preparing written disputes, photocopying his identification and identity theft report, mailing dispute correspondence, reviewing Experian's response, monitoring his credit file, and attempting to prevent further damage to his credit reputation.

83. Plaintiff suffered emotional distress. He experienced anxiety, frustration, embarrassment, and loss of peace of mind because Experian continued to report a fraudulent account he never opened after he gave Experian a sworn identity theft report establishing the fraud.

84. Plaintiff's credit reputation, creditworthiness, and credit score were damaged. After receiving Plaintiff's dispute, Experian continued to maintain the fraudulent Discover account as a derogatory item in Plaintiff's Experian credit file.

85. Experian thereafter published or transmitted one or more consumer reports about Plaintiff to third-party users that included the fraudulent Discover account. Each publication falsely conveyed to a third party that Plaintiff owed a defaulted Discover debt.

86. The publication of inaccurate derogatory information about Plaintiff to third parties, after Experian received his dispute and identity theft report, is a discrete and continuing injury. The injury recurs with each dissemination of his credit file and continues each day Experian permits the inaccuracy to remain.

87. Experian's violations were negligent.

88. Experian's violations were also willful. Experian held Plaintiff's sworn FTC Identity Theft Report and proof of identity, had previously deleted this very account, and still reinserted and reported it as accurate without resolving the fraud.

89. Plaintiff is entitled to recover actual damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681o.

90. Plaintiff is also entitled to recover statutory damages, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681n for Experian's willful violations.

**COUNT III – EXPERIAN'S VIOLATION OF THE**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)**

91. Plaintiff is a natural person and therefore a "consumer" as defined by 15 U.S.C. § 1681a(c).

92. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

93. In 2026, after receiving Plaintiff's identity theft dispute, Experian prepared and issued consumer reports about Plaintiff that included the fraudulent Discover account. 15 U.S.C. § 1681a(d).

94. The fraudulent Discover account was inaccurate. Plaintiff never applied for, opened, authorized, or used it, and never received any card, money, goods, or services from it.

95. Whether Plaintiff opened the account is a question of objective fact, not a matter of legal dispute. The inaccuracy is therefore actionable under 15 U.S.C. § 1681e(b).

96. Whenever Experian prepared a consumer report about Plaintiff, section 1681e(b) required it to follow reasonable procedures to assure maximum possible accuracy of the information in the report. 15 U.S.C. § 1681e(b).

97. This duty is independent of Experian's reinvestigation duty under § 1681i. It governs the procedures Experian used to assemble and prepare each report, not merely its response to a dispute.

98. Experian failed to follow reasonable procedures to assure maximum possible accuracy.

99. Experian had already deleted the fraudulent Discover account from Plaintiff's credit file.

100. Experian then reinserted the deleted account and resumed preparing consumer reports that included it.

101. Experian reinserted the account without first obtaining any certification from the furnisher that the account was complete and accurate. No such certification could exist for an account Plaintiff never opened.

102. Reasonable procedures do not permit a consumer reporting agency to reinsert a previously deleted account, and to prepare reports containing it, without confirming the account's accuracy.

103. Experian's own file showed that it had previously deleted this very account. Reasonable procedures would have measured the reinserted account against that record before reporting it.

104. When Experian prepared and published the reports, it held Plaintiff's sworn FTC Identity Theft Report and proof of his identity, each of which identified the account as fraudulent.

105. Equifax held the identical record and did not report the account. Experian's procedures, which produced the opposite result on the same information, were unreasonable.

106. The inaccuracy did not result from an isolated clerical error. It resulted from Experian's procedures for reinserting and reporting previously deleted accounts without verifying their accuracy.

107. In 2026, after receiving Plaintiff's identity theft dispute, Experian published or transmitted one or more consumer reports about Plaintiff to third-party users that included the inaccurate Discover account.

108. Each publication conveyed to a third party the false statement that Plaintiff owed a defaulted Discover debt.

109. Experian controls the complete records identifying the third-party users that received the inaccurate reports.

110. Experian published the inaccurate reports as a result of its failure to follow reasonable procedures to assure maximum possible accuracy.

111. As a direct and proximate result of Experian's failure to follow reasonable procedures, Plaintiff suffered actual damages.

112. Plaintiff spent time he cannot recover identifying the error, preparing written disputes, photocopying his identification and FTC Identity Theft Report, mailing dispute correspondence, reviewing Experian's response, monitoring his credit file, and attempting to prevent further damage to his credit reputation.

113. Plaintiff incurred out-of-pocket expenses caused by Experian's violation, including postage, certified-mail costs, and copying costs.

114. Plaintiff suffered emotional distress, including anxiety, frustration, embarrassment, and loss of peace of mind, because Experian prepared and published reports stating that Plaintiff owed a fraudulent debt he never incurred.

115. Plaintiff's credit reputation, creditworthiness, and credit score were damaged. The publication of the inaccurate account to third parties harmed Plaintiff's standing in the eyes of those who received it.

116. The publication of inaccurate derogatory information to third parties is a discrete and continuing injury. It recurs with each dissemination of Plaintiff's credit file and continues each day Experian permits the inaccuracy to remain.

117. Experian's violations were negligent.

118. Experian's violations were also willful. Experian had previously deleted this very account, held Plaintiff's sworn FTC Identity Theft Report and proof of identity, and still reinserted, prepared, and published reports containing the account without verifying its accuracy.

119. Plaintiff is entitled to recover actual damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681o.

120. Plaintiff is also entitled to recover statutory damages, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681n for Experian's willful violations.

**COUNT IV - TRANS UNION'S VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681c-2**

121. Plaintiff is a natural person and therefore a "consumer" as defined by 15 U.S.C. § 1681a(c).

122. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

123. Trans Union prepared and issued consumer credit reports about Plaintiff that included the fraudulent Discover account.

124. Plaintiff identified the Discover account to Trans Union as information that resulted from identity theft.

125. Plaintiff gave Trans Union proof of his identity, a copy of his FTC Identity Theft Report, an identification of the fraudulent account, and a statement that the account did not relate to any transaction by him. 15 U.S.C. § 1681c-2(a)(1)–(4).

126. Plaintiff's FTC Identity Theft Report, No. 195793602, sworn under penalty of perjury, is an "identity theft report" as defined by 15 U.S.C. § 1681a(q)(4).

127. Plaintiff's submission triggered Trans Union's duty to block the reporting of the fraudulent account within four business days. 15 U.S.C. § 1681c-2(a).

128. Trans Union still reports the account.

129. A consumer reporting agency may decline or rescind a block only on three grounds, and Trans Union could not reasonably have determined that any applied. 15 U.S.C. § 1681c-2(c)(1).

130. Trans Union blocked then rescinded the block of the fraudulent Discover account.

131. Trans Union could not reasonably have determined that the block was requested in error.

132. Plaintiff submitted a sworn FTC Identity Theft Report, proof of identity, and a statement that the account did not relate to any transaction by him, none of which suggested error. 15 U.S.C. § 1681c-2(c)(1)(A).

133. Trans Union could not reasonably have determined that Plaintiff made a material misrepresentation relevant to the block. Plaintiff swore to his FTC Identity Theft Report under penalty of perjury, and Trans Union held nothing that contradicted it. 15 U.S.C. § 1681c-2(c)(1)(B).

134. Trans Union could not reasonably have determined that Plaintiff obtained goods, services, or money from the account. Plaintiff never opened, used, or received anything from the account, and Trans Union held no evidence that he did. The account's presence in Plaintiff's file before the block is not evidence that he obtained anything. 15 U.S.C. § 1681c-2(c)(1)(C), (c)(3).

135. Equifax received the identical submission and blocked the account. Trans Union held the same record Equifax held and could not reasonably have reached a different result.

136. As a direct and proximate result of Trans Union's conduct, Plaintiff suffered actual damages. Trans Union left the fraudulent Discover account on Plaintiff's Trans Union credit file after Plaintiff disputed it and submitted a sworn FTC Identity Theft Report sufficient to investigate and block the account.

137. Plaintiff spent time he cannot recover identifying the error, filing an FTC Identity Theft Report, preparing written disputes, photocopying his identification and identity theft report, mailing dispute correspondence, reviewing Trans Union's response, monitoring his credit file, and attempting to prevent further damage to his credit reputation.

138. Plaintiff incurred out-of-pocket expenses caused by Trans Union's violation, including postage, certified-mail costs, copying costs, and related expenses of disputing the fraudulent account and attempting to correct his Trans Union credit file.

139. Plaintiff suffered emotional distress. He experienced anxiety, frustration, embarrassment, and loss of peace of mind because Trans Union continued to report a fraudulent account he never opened after he gave Trans Union a sworn identity theft report establishing the fraud.

140. Plaintiff's credit reputation, creditworthiness, and credit score were damaged. After receiving Plaintiff's dispute, Trans Union continued to maintain the fraudulent Discover account as a derogatory item in Plaintiff's Trans Union credit file.

141. Trans Union thereafter published or transmitted one or more consumer reports about Plaintiff to third-party users that included the fraudulent Discover account. Each publication falsely conveyed to a third party that Plaintiff owed a defaulted Discover debt.

142. The publication of inaccurate derogatory information about Plaintiff to third parties, after Trans Union received his dispute and identity theft report, is a discrete and continuing injury. The injury recurs with each dissemination of his credit file and continues each day Trans Union permits the inaccuracy to remain.

143. Trans Union controls the complete records identifying the third-party users that received the inaccurate reports.

144. Trans Union's violations were negligent.

145. Trans Union's violations were also willful. Trans Union held Plaintiff's sworn FTC Identity Theft Report and proof of identity, had previously deleted this very account, and still reinserted and reported it as accurate without resolving the fraud.

146. Plaintiff is entitled to recover actual damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681o.

147. Plaintiff is also entitled to recover statutory damages, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681n for Trans Union's willful violations.

**COUNT V – TRANS UNION'S VIOLATION OF THE**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i**

148. Plaintiff is a natural person and therefore a "consumer" as defined by 15 U.S.C. § 1681a(c).

149. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

150. Trans Union prepared and issued consumer credit reports about Plaintiff that included the fraudulent Discover account.

151. Plaintiff disputed the Discover account directly with Trans Union, including in March 2026.

152. Trans Union was required to conduct a reasonable reinvestigation of the disputed information. 15 U.S.C. § 1681i(a)(1)(A).

153. Trans Union was required to delete the disputed information if it was inaccurate, incomplete, or could not be verified. 15 U.S.C. § 1681i(a)(5)(A).

154. Trans Union's reinvestigation was unreasonable.

155. Plaintiff's dispute gave Trans Union a sworn FTC Identity Theft Report identifying the Discover account as fraudulent and proof of his identity.

156. Trans Union failed to evaluate the FTC Identity Theft Report against the disputed tradeline.

157. Trans Union failed to consult its own file for Plaintiff, which showed that Trans Union had previously deleted this very account.

158. Trans Union had enough information to determine that the account was fraudulent or, at minimum, that it could not be verified as Plaintiff's obligation.

159. On information and belief, Trans Union's reinvestigation consisted of forwarding the dispute to Capital One through an automated or substantially automated e-OSCAR workflow and accepting Capital One's coded verification response.

160. Trans Union did not conduct a meaningful human review of Plaintiff's FTC Identity Theft Report, his proof of identity, or its own record of the prior deletion.

161. Trans Union's acceptance of Capital One's verification was unreasonable because Plaintiff's dispute presented an objective, readily verifiable identity theft.

162. Equifax received the same dispute and the same FTC Identity Theft Report and deleted the account. Trans Union, working from the identical record, did not. No reasonable reinvestigation reaches opposite results on identical evidence.

163. Trans Union also reinserted the previously deleted Discover account without first obtaining certification from Capital One that the account was complete and accurate, and without notifying Plaintiff of the reinsertion within five business days. 15 U.S.C. § 1681i(a)(5)(B)(i)–(ii).

164. Reinserting an account Trans Union had already removed, without any certification of its accuracy, is unreasonable on its face.

165. Trans Union failed to delete, block, or correct the fraudulent Discover account.

166. As a direct and proximate result of Trans Union's conduct, Plaintiff suffered actual damages. Trans Union left the fraudulent Discover account on Plaintiff's Trans Union credit file after Plaintiff disputed it and submitted a sworn FTC Identity Theft Report sufficient to investigate and block the account.

167. Plaintiff spent time he cannot recover identifying the error, filing an FTC Identity Theft Report, preparing written disputes, photocopying his identification and identity theft report, mailing dispute correspondence, reviewing Trans Union's response, monitoring his credit file, and attempting to prevent further damage to his credit reputation.

168. Plaintiff incurred out-of-pocket expenses caused by Trans Union's violation, including postage, certified-mail costs, copying costs, and related expenses of disputing the fraudulent account and attempting to correct his Trans Union credit file.

169. Plaintiff suffered emotional distress. He experienced anxiety, frustration, embarrassment, and loss of peace of mind because Trans Union continued to report a fraudulent account he never opened after he gave Trans Union a sworn identity theft report establishing the fraud.

170. Plaintiff's credit reputation, creditworthiness, and credit score were damaged. After receiving Plaintiff's dispute, Trans Union continued to maintain the fraudulent Discover account as a derogatory item in Plaintiff's Trans Union credit file.

171. Trans Union thereafter published or transmitted one or more consumer reports about Plaintiff to third-party users that included the fraudulent Discover account. Each publication falsely conveyed to a third party that Plaintiff owed a defaulted Discover debt.

172. The publication of inaccurate derogatory information about Plaintiff to third parties, after Trans Union received his dispute and identity theft report, is a discrete and continuing injury. The injury recurs with each dissemination of his credit file and continues each day Trans Union permits the inaccuracy to remain.

173. Trans Union controls the complete records identifying the third-party users that received the inaccurate reports.

174. Trans Union's violations were negligent.

175. Trans Union's violations were also willful. Trans Union held Plaintiff's sworn FTC Identity Theft Report and proof of identity, had previously deleted this very account, and still reinserted and reported it as accurate without resolving the fraud.

176. Plaintiff is entitled to recover actual damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681o.

177. Plaintiff is also entitled to recover statutory damages, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681n for Trans Union's willful violations.

## COUNT VI –TRANS UNION'S VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)

178. Plaintiff is a natural person and therefore a "consumer" as defined by 15 U.S.C. § 1681a(c).

179. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

180. Trans Union prepared and issued consumer reports about Plaintiff that included the fraudulent Discover account. 15 U.S.C. § 1681a(d).

181. The fraudulent Discover account was inaccurate. Plaintiff never applied for, opened, authorized, or used it, and never received any card, money, goods, or services from it.

182. Whether Plaintiff opened the account is a question of objective fact, not a matter of legal dispute. The inaccuracy is therefore actionable under 15 U.S.C. § 1681e(b).

183. Whenever Trans Union prepared a consumer report about Plaintiff, § 1681e(b) required it to follow reasonable procedures to assure maximum possible accuracy of the information in the report. 15 U.S.C. § 1681e(b).

184. This duty is independent of Trans Union's reinvestigation duty under § 1681i. It governs the procedures Trans Union used to assemble and prepare each report, not merely its response to a dispute.

185. Trans Union failed to follow reasonable procedures to assure maximum possible accuracy.

186. Trans Union had already deleted the fraudulent Discover account from Plaintiff's credit file.

187. Trans Union then reinserted the deleted account and resumed preparing consumer reports that included it.

188. Trans Union reinserted the account without first obtaining any certification from the furnisher that the account was complete and accurate. No such certification could exist for an account Plaintiff never opened.

189. Reasonable procedures do not permit a consumer reporting agency to reinsert a previously deleted account, and to prepare reports containing it, without confirming the account's accuracy.

190. Trans Union's own file showed that it had previously deleted this very account. Reasonable procedures would have measured the reinserted account against that record before reporting it.

191. When Trans Union prepared and published the reports, it held Plaintiff's sworn FTC Identity Theft Report and proof of his identity, each of which identified the account as fraudulent.

192. Equifax held the identical record and did not report the account. Trans Union's procedures, which produced the opposite result on the same information, were unreasonable.

193. The inaccuracy did not result from an isolated clerical error. It resulted from Trans Union's procedures for reinserting and reporting previously deleted accounts without verifying their accuracy.

194. In 2026, after receiving Plaintiff's identity theft dispute, Trans Union published or transmitted one or more consumer reports about Plaintiff to third-party users that included the inaccurate Discover account.

195. Each publication conveyed to a third party the false statement that Plaintiff owed a defaulted Discover debt.

196. Trans Union controls the complete records identifying the third-party users that received the inaccurate reports.

197. Trans Union published the inaccurate reports as a result of its failure to follow reasonable procedures to assure maximum possible accuracy.

198. As a direct and proximate result of Trans Union's failure to follow reasonable procedures, Plaintiff suffered actual damages.

199. Plaintiff spent time he cannot recover identifying the error, preparing written disputes, photocopying his identification and FTC Identity Theft Report, mailing dispute correspondence, reviewing Trans Union's response, monitoring his credit file, and attempting to prevent further damage to his credit reputation.

200. Plaintiff incurred out-of-pocket expenses caused by Trans Union's violation, including postage, certified-mail costs, and copying costs.

201. Plaintiff suffered emotional distress, including anxiety, frustration, embarrassment, and loss of peace of mind, because Trans Union prepared and published reports stating that Plaintiff owed a fraudulent debt he never incurred.

202. Plaintiff's credit reputation, creditworthiness, and credit score were damaged. The publication of the inaccurate account to third parties harmed Plaintiff's standing in the eyes of those who received it.

203. The publication of inaccurate derogatory information to third parties is a discrete and continuing injury. It recurs with each dissemination of Plaintiff's credit file and continues each day Trans Union permits the inaccuracy to remain.

204. Trans Union's violations were negligent.

205. Trans Union's violations were also willful. Trans Union had previously deleted this very account, held Plaintiff's sworn FTC Identity Theft Report and proof of identity, and still reinserted, prepared, and published reports containing the account without verifying its accuracy.

206. Plaintiff is entitled to recover actual damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681o.

207. Plaintiff is also entitled to recover statutory damages, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681n for Trans Union's willful violations.

**COUNT VII - CAPITAL ONE'S VIOLATION OF THE**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)**

208. Plaintiff is a natural person and therefore a "consumer" as defined by 15 U.S.C. § 1681a(c).

209. Capital One is a "furnisher" of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2 and is the successor by merger to Discover Bank.

210. Capital One furnished information about the fraudulent Discover account to Experian and Trans Union.

211. The information Capital One furnished was inaccurate because Plaintiff never opened the Discover account.

212. Plaintiff disputed the Discover account with Experian and Trans Union, including in March 2026.

213. Experian and Trans Union each notified Capital One of Plaintiff's dispute.

214. After receiving those notices, Capital One was required to conduct a reasonable investigation, review all relevant information the bureaus provided, report the results, and modify, delete, or block information that was inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681s-2(b)(1).

215. The notice told Capital One that Plaintiff disputed the account as identity theft and had filed an FTC Identity Theft Report.

216. Whether Plaintiff opened the account is a question of fact, not a legal dispute, and the account-opening records answer it.

217. Capital One failed to conduct a reasonable investigation.

218. The thief opened the account using Plaintiff's name and Social Security number. Confirming that those identifiers matched Capital One's records confirmed nothing, because the identifiers matched only because the thief stole them.

219. A reasonable investigation of an identity theft dispute does not stop at confirming that Capital One reported the same information it stored. It required Capital One to test whether Plaintiff actually opened the account by examining the account-opening records.

220. If Capital One possessed Discover's account-opening documents or identifiers, it failed to review and compare them against Plaintiff's information.

221. If Capital One lacked account-opening documents or identifiers sufficient to establish that Plaintiff opened the account, it could not reasonably verify the account as accurate.

222. Either way, Capital One was required to report that the account did not belong to Plaintiff or could not be verified, and to delete, block, or correct it.

223. On information and belief, Capital One handled Plaintiff's disputes through an automated or substantially automated ACDV process and returned coded verified responses without meaningful review of the identity theft.

224. Capital One instead verified the account as accurate and failed to delete, block, or correct it.

225. Equifax deleted the account on the same record. Capital One's verification confirms its investigation was unreasonable.

226. As a direct and proximate result of Capital One's conduct, Plaintiff suffered actual damages. Capital One verified and continued to furnish a fraudulent Discover account after receiving notice that Plaintiff disputed it as identity theft.

227. Plaintiff spent time he cannot recover preparing and mailing disputes, photocopying his identification and FTC Identity Theft Report, reviewing the bureaus' responses, monitoring his credit file, and addressing the fraudulent account.

228. Plaintiff incurred out-of-pocket expenses, including postage, certified-mail costs, copying costs, and related expenses of disputing the fraudulent account.

229. Plaintiff suffered emotional distress, including anxiety, frustration, embarrassment, and loss of peace of mind, because Capital One verified a fraudulent account he never opened.

230. Plaintiff's credit reputation, creditworthiness, and credit score were damaged. The bureaus published the account Capital One verified to third-party users, each publication falsely conveying that Plaintiff owed a defaulted Discover debt.

231. The publication of the inaccurate account to third parties, after Capital One received notice of the dispute, is a discrete and continuing injury that recurs with each dissemination of Plaintiff's credit file.

232. Capital One's violations were negligent.

233. Capital One's violations were also willful. Capital One had notice of an identity theft dispute supported by a sworn FTC Identity Theft Report, had the means to examine the account-opening records, and still verified the account as accurate.

234. Plaintiff is entitled to recover actual damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681o.

235. Plaintiff is also entitled to recover statutory damages, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. § 1681n for Capital One's willful violations.

**Relief Requested**

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment against all Defendants for all of the following:

a. Actual damages.

b. Statutory damages.

c. Punitive damages.

d. Reasonable attorney's fees and costs.

e. Prejudgment and post judgment interest.

f. Any other relief that the Court may deem proper.

**Plaintiff respectfully demands trial by jury.**

Dated: June 1, 2026

Respectfully submitted,

*/s/ Darren R. Newhart*
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd, Suite 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile: (561) 473-2946